UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
EQUAL EMPLOYMENT OPPORTUNITY        )
COMMISSION,                         )
                                    )
          Plaintiff,                )
                                    )
FRANK MAHONEY BURROUGHS,            )
                                    )
          Intervenor Plaintiff,     )        CIVIL ACTION
                                    )        NO. 10-11648-WGY
                                    )
          v.                        )
                                    )
AUTOZONE, INC., and                 )
AUTOZONERS, LLC,                    )
                                    )
          Defendants,               )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                      March 29, 2013

## I.   INTRODUCTION

This pending motion for attorneys' fees of intervenor plaintiff Frank Mahoney Burroughs ("Mahoney Burroughs") follows a settlement and consent decree between the plaintiff Equal Employment Opportunity Commission (the "Commission"), Mahoney Burroughs, and the defendants AutoZone, Inc. and AutoZoners, LLC (collectively, "AutoZone").

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Commission commenced the underlying civil rights action

under Title VII of the Civil Rights Act of 1964 ("Title VII")on
behalf of Mahoney Burroughs against AutoZone, Compl. Jury Trial
Demand ("Compl."), ECF No. 1, and Mahoney Burroughs moved to
intervene, alleging violations of Title VII and Massachusetts
General Laws chapter 151B, section 4 ("Chapter 151B"), Mot.
Intervene Frank Mahoney Burroughs, ECF No. 4; Am. Mot. Intervene
Frank Mahoney Burroughs, ECF No. 10.  The Court granted Mahoney
Burroughs's motion to intervene.  Elec. Order, Dec. 22, 2010.
All of the parties moved for summary judgment.  Pl. & Intervenor
Pl.'s Mot. Partial Summ. J., ECF No. 33; Defs.' Mot. Summ. J.,
ECF No. 41.  This Court granted summary judgment for the
Commission and Mahoney Burroughs on the federal and state
religious accommodation claims and denied summary judgment as to
the remaining claims due to genuine issues of material fact.  See
Tr. Mot. Hr'g 11:9-11, 13:4-10, 13:24-14:2, ECF No. 61.  The
parties settled and, in a consent decree approved by this Court,
stipulated that, in addition to extensive injunctive relief,
Mahoney Burroughs ought receive $75,000.00 in monetary relief
plus reasonable attorneys' fees and costs.  Consent Decree, ECF
No. 66.  As the parties were not able to agree on the amount for
attorneys' fees and costs, id. at 3, Mahoney Burroughs moved for
reasonable attorneys' fees to be decided by this Court pursuant
to the consent decree, Mot. Intervenor Pl. Att'ys' Fees & Costs,
ECF No. 67.

Mahoney Burroughs seeks $220,355.50 in attorneys' fees, $1,290.25 in taxable costs, and $1,332.90 in non-taxable costs. Reply Br. Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs ("Reply Br.") 10, ECF No. 79; Bill Costs, ECF No. 74.

AutoZone opposes Mahoney Burroughs's requested award and argues that it ought be reduced substantially due to overstaffing, duplicative billing, excessive supervision and coordination, time spent on media-related matters, giving personal advice, billing for preparatory tasks, administrative and clerical tasks, and use of the block-billing method and partial billing in quarter-hour increments.  AutoZone also contends that two of the attorneys for Mahoney Burroughs charged an unreasonably high hourly rate.  Defs.' Opp'n Intervenor Pl.'s Mot. Att'ys' Fees & Costs ("AutoZone Opp'n"), ECF No. 77.

## III. ANALYSIS

### A. Entitlement to Attorneys' Fees

Both Title VII and Massachusetts General Laws chapter 151B expressly provide for an award of reasonable attorneys' fees and costs to the prevailing party.  42 U.S.C. § 2000e-5(k);[1] Mass.

---

[1] 42 U.S.C. section 2000e-5(k) states in relevant part:

> In any action or proceeding . . . the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee . . . as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Gen. Laws ch. 151B, § 9.[2]  As Mahoney Burroughs prevailed on his federal and state law religious accommodation claims at the summary judgment stage, the parties agreed and stipulated that Mahoney Burroughs ought be compensated for his reasonable attorneys' fees and costs accordingly.  Consent Decree 3-4.

The district court, in its broad discretion, determines the amount of reasonable fees and costs that are awarded.  McDonough v. City of Quincy, 353 F. Supp. 2d 179, 183 (D. Mass. 2005).

### B. Determination of Reasonable Attorneys' Fees

The "lodestar method" is the proper methodology to determine attorneys' fees.  Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 250 (D. Mass. 2011).  To arrive at a "lodestar" figure, the Court multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see Conservation Law Found., Inc. v. Roland Teiner Co., 832 F. Supp. 2d 102, 104

---

42 U.S.C. § 2000e-5(k).

[2] Section 9 of chapter 151B of the Massachusetts General Laws provides in part:

> If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust.

Mass. Gen. Laws ch. 151B, § 9.

(D. Mass. 2011).  While the Court may adjust the lodestar amount
in response to factors of each particular case, the lodestar
figure does presumptively represent a reasonable award of fees.
McDonough, 353 F. Supp. 2d at 183-84; see also System Mgmt., Inc.
v. Loiselle, 154 F. Supp. 2d 195, 204 (D. Mass. 2001), attorneys'
fees determination vacated as moot, 303 F.3d 100 (1st Cir. 2002).

### 1. Hours Reasonably Spent[3]

To determine the hours reasonably expended on Mahoney
Burroughs's case, the Court scrutinizes the contemporaneous
billing records that Mahoney Burroughs's counsel submitted to
determine the hours actually spent and then deducts those hours
that were insufficiently documented or "duplicative,
unproductive, excessive, or otherwise unnecessary."  Grendel's
Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984); Hensley,
461 U.S. at 434; see also Conservation Law Found., 767 F. Supp.
2d at 251 ("Because only reasonably expended hours are to be used

---

[3] No party has raised the question of whether deductions
should be made for the claims that survived summary judgment.
Although the Court granted Mahoney Burroughs's summary judgment
motion as to his federal and state religious accommodation
claims, it left his hostile work environment, retaliation, and
harassment claims to be tried before a jury at a later date.  Tr.
Mot. Hr'g 11:9-14:2.  It is unclear whether the remaining claims
ought be considered "successful" and, therefore, whether the
hours expended in connection with those claims ought be fully
credited.  Cf. Diaz v. Jiten Hotel Mgmt., Inc., No. 08-10143-WGY,
2013 WL 1080534 (D. Mass. Mar. 15, 2013).  As AutoZone fails to
address this issue -- and because it proffers no evidence to
suggest that the claims would not have been otherwise meritorious
had they proceeded to trial -- this Court will not discount any
of the attorneys' requested hours on this basis.

in the calculation, this Court may reduce the number of hours billed if inadequately documented or excessive, redundant, or otherwise unnecessary." (quoting Hensley, 461 U.S. at 434) (internal quotation marks omitted)).

The burden of proving that the hours claimed were reasonably expended lies with the fee petitioner. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

Mahoney Burroughs was represented by Sandeep Kaur Randhawa ("Randhawa") and Harsimran Kaur ("Kaur") of the Sikh Coalition, Laura Maslow-Armand ("Maslow-Armand") and Jamie Spiller ("Spiller") of the Lawyer's Committee for Civil Rights Under Law of the Boston Bar Association ("Lawyer's Committee"), and David S. Godkin ("Godkin") of Birnbaum & Godkin, LLP, all of whom contemporaneously recorded hours that they worked on Mahoney Burroughs's case. Mem. Law Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs ("Mem. Supp.") 4, 2, 8, 9, ECF No. 68. Table 1 below summarizes the total hours each attorney claims and the fees requested as amended by Mahoney Burroughs's reply brief. See id.; Reply Br. 10.

**Table 1**

| Name | Position | Hours | Fee Amount |
|------|----------|-------|------------|
| David S. Godkin | Lead Counsel | 311.5 | $132,387.50 |
| Laura Maslow-Armand | Staff Attorney Lawyer's Committee | 223.4 | $55,850.50 |
| Sandeep Kaur Randhawa | Staff Attorney Sikh Coalition | 163.7 | $24,555.00 |
| Harsimran Kaur | Legal Director Sikh Coalition | 15.0 | $4,950.00 |
| Jamie R. Spiller | Legal Fellow Lawyer's Committee | 20.9 | $2,612.50 |
| | **TOTAL Requested Fees:** | | **$220,355.50** |

### a. Overstaffing and Duplicative Billing

Fee-shifting statutes, as found in 42 U.S.C. section 2000e-5(k) and section 9 of Massachusetts General Laws chapter 151B, were enacted to afford effective access to the judiciary for plaintiffs whose civil rights have been violated.  See Hensley, 461 U.S. at 429.

AutoZone argues that the Commission sufficiently represented Mahoney Burroughs's rights where the Commission's and Mahoney Burroughs's interests were related and that he was thus not entitled to attorneys' fees for any "duplicative" work performed. AutoZone Opp'n 4.

AutoZone's argument is unconvincing in light of the clear language of Title VII's fee-shifting statute.  The enforcement provisions of Title VII set forth that if the Commission commences a lawsuit on behalf of an aggrieved person to litigate

a civil rights violation, the aggrieved person has a right to
intervene in such lawsuit to protect his individual interests.
42 U.S.C. § 2000e-5(f)(1).[4]  As a rightful plaintiff to the
lawsuit, Mahoney Burroughs is, therefore, entitled to recover
such attorneys' fees as are due to any "prevailing party" under
the statute.  See 42 U.S.C. § 2000e-5(f)(1), (k); see also Hall
v. City of Auburn, 567 F. Supp. 1222, 1226 (D. Me. 1983) ("[T]he
mere availability of the Commission's attorney is not enough to
deny plaintiffs their attorneys' fees where the Commission's
attorney did not act."); Equal Emp't Opportunity Comm'n v. Sage
Realty Corp., 521 F. Supp. 263, 269 (S.D.N.Y. 1981) ("A
prevailing plaintiff should not be denied an award of attorneys'
fees because . . . []he did not [him]self initiate the action but
rather exercised h[is] statutory right pursuant to 42 U.S.C.
s[ection] 2000e-5(f)(1) to intervene in an action commenced by
the [Commission]."); Equal Emp't Opportunity Comm'n v. Murphy

_____

    [4] 42 U.S.C. § 2000e-5(f)(1) provides in relevant part:

        If within thirty days after a charge is filed with
        the Commission . . ., the Commission has been
        unable to secure from the respondent a conciliation
        agreement acceptable to the Commission, the
        Commission may bring a civil action against any
        respondent not a government, governmental agency,
        or political subdivision named in the charge. . . .
        The person or persons aggrieved shall have the
        right to intervene in a civil action brought by the
        Commission . . . .

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

Motor Freight Lines, Inc., 488 F. Supp. 381, 389 (D. Minn. 1980) (pointing out that a literal application of Title VII's fee-shifting provision warrants payment of attorneys' fees to any prevailing plaintiff including intervening plaintiffs).  The Commission's interests necessarily align with that of an intervenor plaintiff if, as here, the Commission chose to pursue a lawsuit against a civil rights violator to vindicate the intervenor plaintiff's rights.  To deny an attorneys' fees award on this ground would seriously undermine the legislative purpose behind the Title VII fee-shifting provision.  See Hensley, 461 U.S. at 429.

Furthermore, Mahoney Burroughs rightfully sought the assistance of legal professionals effectively to navigate the murky waters[5] of his Title VII and Chapter 151B claims without compromising his substantive rights due to procedural error.  See New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 68, 71 (1980) (holding that a plaintiff is entitled to compensation for attorneys' fees paid for representation in state administrative proceedings which were necessarily intertwined with plaintiff's federal Title VII claim and noting that "[c]learly . . . an attorney is needed to assist the [plaintiff] during the state

---

[5] "Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer . . . ."  Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976).

9

proceedings").

The mere involvement of the Commission in this case does not altogether foreclose Mahoney Burroughs's recovery of reasonable attorneys' fees due to overstaffing; however, clearly duplicative work does not merit compensation.  AutoZone argues that a "substantial portion of the work performed by [Mahoney Burroughs's] counsel . . . was duplicative of the work performed by counsel for the [Commission] or one another," noting "numerous instances of multiple attorneys reviewing the same documents, performing or reviewing the same research, and editing the same documents."  AutoZone Opp'n 4.

The First Circuit has long held that fee-shifting statutes are not designed "to serve as full employment or continuing education programs for lawyers and paralegals."  Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (noting that "[a] trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism").  As such, hours expended on research or drafts of the same content by two or more lawyers, or attendance of two or more lawyers at a court hearing or conference when one attorney would have sufficed, may and in fact ought be deducted from the hours claimed.  Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986).

Mahoney Burroughs claims a total of 734.5 hours worked by

five attorneys, Reply Br. 10, which includes a staggering seven
hours billed by two attorneys for attendance upon a mediation,
Aff. Lisa A. Krupicka ("Krupicka Aff."), Ex. A, Adverse Att'ys'
Fees -- Duplicative and Excessive Time Entries 7, ECF No. 78-1.
This Court has ruled on previous occasion that billing for trial
observation is inappropriate when "presence in the courtroom is
inconsequential to the trial," Conservation Law Found., 767 F.
Supp. 2d at 254, and hereby reiterates this ruling.  Thus, after
thorough review of the submitted time logs, the Court deducts the
following hours it considers duplicative: 48.3 hours from
Randhawa, 74.9 hours from Maslow-Armand, and 11.75 hours from
Godkin.

### b. Time Spent on Supervision and Coordination

AutoZone objects to paying for time spent on general
supervision of attorneys.  AutoZone Opp'n 10-11.

As the First Circuit stated in Lipsett v. Blanco, 975 F.2d
934, a reasonable attorneys' fees award is not intended to
compensate an attorney for providing "continuing education" or
for carrying out tasks not essential to the actual case at hand.
Id. at 938; see Conservation Law Found., 832 F. Supp. 2d at 106
(discounting hours spent on supervision as "unrelated" to the
case); United Nuclear Corp. v. Cannon, 564 F. Supp. 581, 590-91
(D.R.I. 1983) (deducting hours spent on "non-related general
work," id. at 590, and noting that while valuable to a law firm

and the aspiring lawyers alike, the purpose of a summer internship program is not to "meet immediate client needs," id. at 591, and it is thus the law firm which "should bear the principal cost of [such] a program," id.).

Mahoney Burroughs requests that Kaur, the legal director of the Sikh Coalition, be compensated for 15 hours spent on his case.  Mem. Supp. 4.  According to her contemporaneous time logs, Kaur spent 9.6 hours of the aforementioned 15 in her supervisory capacity as legal director, reviewing and editing research and work performed by her staff attorneys, and communicating with her staff attorneys to be kept up to date.[6]  Aff. Sandeep Kaur Randhawa Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs, Ex. A, Sikh Coalition -- Mahoney Burroughs Fee Chart ("Sikh Coalition Fee Chart") 13-14, ECF No. 71-1.

In addition, AutoZone brings to the Court's attention that Mahoney Burroughs's counsel spent an exceedingly large amount of time in conference with each other as well as with the

---

[6] For example, on December 3, 2009, Kaur billed 0.6 hours for "[r]eview[ing] staff attorney's intake notes; discuss[ing] intake and how to advise client with staff attorney"; on December 22, 2009, she billed 0.8 hours claiming she "[r]eviewed client documents; discussed strategy/facts/legal theory with Sikh Co[alition] attorneys," a statement also assailable for its vagueness; and on April 5, 2010, Kaur claimed 0.5 hours for "[c]ommunicat[ing] with staff attorney & legal fellow re: facts & leg[]al theory," another rather vague description.  Aff. Sandeep Kaur Randhawa Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs, Ex. A, Sikh Coalition -- Mahoney Burroughs Fee Chart 13-14, ECF No. 71-1.

Commission's counsel.  AutoZone Opp'n 11.

While the Court is mindful of the necessity to confer and especially for lead counsel to coordinate one's forces in order to prevent duplicative work and litigate Mahoney Burroughs's claims effectively, the time spent on conferencing must be within reason, and excessive conferencing is to be disallowed.  See Conservation Law Found., 832 F. Supp. 2d at 105.

Having reviewed the relevant records, the Court regards 7.2 hours of Maslow-Armand's 223.4 total hours as having been spent on excessive conferencing and consequently deducts them as time unreasonably spent.[7]  Aff. Laura Maslow-Armand Supp. Pl.'s Mot. Allowance Att'ys' Fees & Costs, Ex. A, Lawyers Committee for Civil Rights -- Mahoney Burroughs Fee Chart ("Lawyer's Committee Fee Chart") 1-7, ECF No. 70-1.  Likewise, Randhawa spent 12.3 hours of her requested 163.7 hours in conference with her superior or other counsel, and the Court disregards those hours as excessive conferencing.[8]  See Sikh Coalition Fee Chart 1-13.

---

[7] Entries include one hour billed on January 28, 2011: "Confer re joint statement filed"; three hours billed on June 21, 2011: "LCCR meeting with law intern re Defendants' document production"; and two hours billed on July 6, 2011: "Discuss deficient production and interrogatory responses."  Aff. Laura Maslow-Armand Supp. Pl.'s Mot. Allowance Att'ys' Fees & Costs, Ex. A, Lawyers Committee for Civil Rights -- Mahoney Burroughs Fee Chart 2, 4, ECF No. 70-1.

[8] Sample entries include: 0.4 hours billed on May 18, 2010: "Conversation with Satvir Kaur re: AutoZone's request for documentation"; 1.5 hours billed on May 16, 2011: "Communicated with supervisor and EEOC counsel re: EEOC response to RFI re:

### c. Media-Related Matters

Attorneys' fees may not be recovered for time spent interfacing with the press on media-related matters.  McLaughlin v. Bos. Sch. Comm., 976 F. Supp. 53, 72 (D. Mass. 1997) (Garrity, J.).  "Even where communication with the press in [a] matter of great public interest was necessary and appropriate . . . it does not follow that everything that counsel has done to further public understanding or which related to the issues presented by the suit is time 'expended on the litigation.'"  Id. (alteration in original) (quoting United States v. Yonkers Bd. of Educ., 118 F.R.D. 326, 331 (S.D.N.Y. 1987)) (internal quotation marks omitted).

Randhawa spent a total of 3.2 hours[9] counseling Mahoney Burroughs and other individuals on how to handle media inquiries, speaking with a Commission investigator about the press (among other things),[10] and drafting a press release heralding the Sikh

---

Sikhism;" and 1 hour billed on January 16, 2012: "Communicated with Legal Director and co-counsel in preparation for mediation." Sikh Coalition Fee Chart 3, 8, 12.

[9] AutoZone technically asked this Court to deduct 2.9 hours for Randhawa's media-related work.  AutoZone Opp'n 13.  The number of hours challenged, however, totals 3.2.  See Krupicka Aff., Ex. C, Adverse Att'ys' Fees -- Media Time Entries ("Media Time Entries"), ECF No. 78-3.  The Court presumes, then, that the figure suggested by AutoZone was merely the product of mathematical error.

[10] As Randhawa did not separate the time she spent speaking to the investigator about the press from that spent speaking about other matters, see Media Time Entries, this Court can do

Coalition's success advocating on Mahoney Burroughs's behalf. See Sikh Coalition Fee Chart 1, 4-5; see also Krupicka Aff., Ex. C, Adverse Att'ys' Fees -- Media Time Entries, ECF No. 78-3. Accordingly, this time will be deducted from Randhawa's recorded hours.

### d. Personal Advice and Preparatory Tasks

Courts generally do not recognize time billed to matters unrelated to the litigation for which an attorney has been retained. See Marrotta v. Suffolk Cnty., 726 F. Supp. 2d 1, 6 (D. Mass. 2010).

AutoZone challenges a number of entries submitted by Mahoney Burroughs's counsel on the ground that they relate to "several categories of personal advice that were not directly related to this litigation." AutoZone Opp'n 13. Specifically, AutoZone takes issue with counsel's correspondence with Mahoney Burroughs prior to the commencement of litigation exploring Mahoney Burroughs's options for seeking redress for his suspension from AutoZone and for AutoZone's denial of unemployment benefits; time spent by counsel advising Mahoney Burroughs on how to deal with threatening telephone calls that he had received; and time spent seeking a religious accommodation to allow Mahoney Burroughs to carry a kirpan -- a ceremonial weapon traditionally borne by observers of Sikhism -- into the federal courthouse when he

_____

nothing but discount the entirety of the time billed.

15

attended depositions and other pretrial proceedings.  See id. at 13-15; see also Krupicka Aff., Ex. D, Adverse Att'ys' Fees -- Personal Advice Time Entries ("Personal Advice Time Entries") 1- 3, ECF No. 78-4.

AutoZone also attacks certain entries as denoting time unnecessarily spent, including drafts of affidavits that were not used or preparation of Mahoney Burroughs's direct examination in anticipation of trial before the parties had reached settlement. See AutoZone Opp'n 15; see also Krupicka Aff., Ex. E, Adverse Att'ys' Fees -- Unnecessary Time Entries ("Unnecessary Time Entries"), ECF No. 78-5.

AutoZone's contestations regarding counsel's work prior to litigation are ultimately unavailing.  As a general rule, an award of attorneys' fees "may include compensation for time spent in exhausting administrative remedies and other prelitigation services necessary or beneficial to the litigation."  Mezo v. Int'l Union, United Steelworkers of Am., 558 F.2d 1280, 1283 (7th Cir. 1977).  Courts have typically disallowed the reimbursement of prelitigation expenses only in cases where the relevant fee- shifting statute prohibited such compensation.  See, e.g., Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 705-06 (2010) (declining to award attorneys' fees under the Equal Access to Justice Act ("EAJA") for work conducted prior to the filing of the complaint because the "EAJA does not permit recovery of

attorneys' fees incurred prior to litigation in court in the absence of a 'civil action' or 'adversary adjudication' within the meaning of 28 U.S.C. § 2412(d)(3)," id. at 705).  In the instant case, counsel's time spent educating Mahoney Burroughs about his possible prelitigation options for redress is fully compensable -- and so is time expended on trial preparation of the intervenor plaintiff and potential witnesses, even if ultimately mooted due to settlement.  An attorney's zealous and robust representation of her client's interests in the early stages of a dispute may preempt the need to bring suit at all, an outcome that would inure to the benefit of all parties involved. Although litigation was not avoided here, it would be imprudent to withhold from counsel an award of attorneys' fees for what can be rightly deemed services rendered to the benefit of the litigation.

The time expended by counsel on matters pertaining to the threatening telephone calls and the accommodation for the kirpan, however, are not sufficiently related to the litigation to warrant an award of attorneys' fees.  To be sure, attorneys owe to their clients a host of fiduciary duties, Sentinel Prods. Corp. v. Platt, No. Civ.A.98-11143-GAO, 2002 WL 1613713, at *2 (D. Mass. July 22, 2002) (O'Toole, J.), and competent counsel are expected to tend to their clients' concerns broadly. Nevertheless, in deciding whether to honor a request for

attorneys' fees, a court must be assured that the time expended by counsel was actually in furtherance of the underlying litigation.  Cf. Specialty Retailers, Inc. v. Main St. NA Parkade, LLC, 804 F. Supp. 2d 68, 74 (D. Mass. 2011) (Neiman, M.J.) (holding that attorneys' fees were not warranted for, inter alia, "counsel's resolution of potential conflicts of interest between his two clients").  Counsel's efforts to deal with threats made against Mahoney Burroughs and to secure an accommodation for Mahoney Burroughs's kirpan, while no doubt significant, are not properly compensable.  Accordingly, the Court deducts 22.9 hours for time spent on these matters.[11]

While for the most part this Court deems unobjectionable the time entries AutoZone listed as unnecessary, it finds fault with the vagueness and seeming irrelevance of 0.4 hours billed by Maslow-Armand on September 20, 2011: "Call from client to discuss visit to AZ store in Revere."  Unnecessary Time Entries.  The Court therefore deducts this amount from Maslow-Armand's claimed hours.

---

[11] Specifically, this Court deducts the 4.9 hours Maslow-Armand spent assisting Mahoney Burroughs with the threatening telephone calls, as well as the following hours from the following attorneys for their role in attempting to obtain a religious accommodation for Mahoney Burroughs from May 25, 2011, to January 19, 2012: 0.5 hours for Maslow-Armand, 14.5 hours for Randhawa, and three hours for Godkin.  See Personal Advice Time Entries.

### e. Administrative and Clerical Tasks

It is well settled in the First Circuit that "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." Lipsett, 975 F.2d at 940.  As a result, hours spent performing such tasks should be compensated at a rate that is commensurate with the nature and complexity of the work.  See id.

AutoZone argues that some of the time entries submitted by Randhawa, Kaur, and Maslow-Armand relate solely to the completion of administrative and clerical tasks and should therefore be discounted or eliminated entirely.  AutoZone Opp'n 15-16.  In support of its proposition, AutoZone has identified the line items on the counsels' time sheets that it believes constitutes administrative and clerical tasks.  See Krupicka Aff., Ex. F, Adverse Att'ys' Fees -- Admin Time Entries ("Admin. & Clerical Time Entries"), ECF No. 78-6.

While this Court agrees that certain of the aforementioned attorneys' hours ought be discounted, some of the tasks highlighted by AutoZone are properly and fully compensable. Courts have generally regarded the following activities as administrative or clerical functions for which proportionate fee deductions ought be imposed: document preparation, organization, distribution, and copying; drafting emails and other correspondence; data collection; legal cite-checking; scheduling

and logistical planning; filing court documents; factual research; and docket review and management.  See, e.g., Lipsett, 975 F.2d at 939-40; Conservation Law Found., 767 F. Supp. 2d at 254-55; Iverson v. Braintree Prop. Assocs., L.P., No. 04cv12079-NG, 2008 WL 552652, at *4 n.8 (D. Mass. Feb. 26, 2008) (Gertner, J.); cf., e.g., Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).  Of course, this list is by no means exhaustive, and the Court recognizes that, in certain instances, the distinction between "legal" and "administrative and clerical" work is less than obvious.  See Lipsett, 975 F.2d at 939-40 (observing that the filing of motions and the translation of depositions "fell into the gray area between purely clerical tasks and those properly entrusted to a paralegal," id. at 940); cf. Jenkins, 491 U.S. at 288 n.10 ("Much . . . work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal.").  Moreover, the mere fact that a particular activity involves some degree of administrative or clerical work does not necessarily mean that it loses the totality of its legal character.  See, e.g., Currier v. United Techs. Corp., No. 02-107-P-H, 2005 WL 1217278, at *2 & n.3 (D. Me. May 23, 2005) (criticizing the defendant's contestation of timekeeping line items on the basis of their inclusion of the terms "correspondence," "telephone conference," or "review," id. at *2 n.3 (internal quotation marks omitted)).  While the majority of

Randhawa, Kaur, and Maslow-Armand's challenged entries are indeed administrative or clerical in nature, see, e.g., Admin. & Clerical Time Entries (challenging, inter alia, the review and summary of deposition documents; client communications regarding the notification of new contact information; and the scanning, delivery, and preparation of documents), two of the entries cannot be so construed, as they are customarily performed by licensed attorneys, see id. (recording 1.2 hours for "[r]esearch[ing] and draft[ing] pro hac vice motion and notice of appearance for submission to district court" and 2.5 hours for "[m]eeting with client in [Lawyer's Committee] office and draft[ing] retainer and release").

As time spent on administrative and clerical tasks has at least some value, however, courts are advised against discounting entries for such activities in their entirety. See Lipsett, 975 F.2d at 940 (commenting that hours expended on administrative and clerical tasks "should not be completely eliminated but should be compensated at a less extravagant rate"). In the past, this Court has considered deductions of one-half of the hours properly assigned to nonlegal tasks to be reasonable. See, e.g., Conservation Law Found., 767 F. Supp. 2d at 254. Accordingly, the Court deems 38.3 hours to have been improperly billed for administrative and clerical tasks and, therefore, deducts 19.15

21

hours from counsel's requested hours.[12]

### f. Block Billing

"Block billing" is an industry term used to describe "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Conservation Law Found., Inc., 767 F. Supp. 2d at 253 (quoting Torres-Rivera v. Espada-Cruz, No. 99-1972CCC, 2007 WL 906176, at *2 (D.P.R. Mar. 22, 2007), vacated on other grounds sub nom., Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331 (1st Cir. 2008)) (internal quotation mark omitted). Judges generally disfavor the employment of block billing because it "requires decipher[ing]" on the judges' part. See id. (alteration in original) (quoting Marrotta, 726 F. Supp. 2d at 7 n.7) (internal quotation marks omitted). As a result, district courts have broad discretion in reducing fee requests where attorney time records are rife with "questionable entries." Torres-Rivera, 524 F.3d at 340. The First Circuit has endorsed across-the-board global fee reductions as an appropriate remedy for block billing practices. See id.

The records of Godkin, Maslow-Armand, Randhawa, and Kaur

---

[12] In reaching the 38.3-hour figure, this Court identified the following hours billed by the following attorneys: 2.3 hours for Randhawa, 0.5 hours for Kaur, and 35.5 hours for Maslow-Armand. See Admin. & Clerical Time Entries. As a result, Randhawa, Kaur, and Maslow-Armand will be given credit only for 1.15, 0.25, and 17.75 hours, respectively.

prominently feature evidence of block billing.  See, e.g., Aff.
David S. Godkin Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs,
Ex. A, Birnbaum Godkin – Mahoney Burroughs Fee Chart ("Godkin Fee
Chart"), ECF No. 69-1 (recording, with regard to Godkin, 2.25
hours for "[s]tudy of law re: 'Single Employer Doctrine' [sic],
'Integrated Enterprise Test;' review[ing] notice of scheduling
conference; email[ing] co-counsel re: deadlines," id. at 1);
Lawyer's Committee Fee Chart (recording, with regard to Maslow-
Armand, one hour for "[r]eview[ing] consent decree;
conferenc[ing] [Lawyer's Committee] staff," id. at 7); Sikh
Coalition Fee Chart (recording, with regard to Randhawa and Kaur,
0.6 hours for "[d]raft[ing] and submitt[ing] letter to
Unemployment office in response to AutoZone denial of
unemployment benefits; sp[eaking] to unemployment adjuster and
supervisor re: claims," id. at 2, and 0.8 hours for
"[r]eview[ing] client documents; discuss[ing]
strategy/facts/legal theory with Sikh Co[alition] attorneys," id.
at 13, respectively); see also Krupicka Aff., Ex. G, Adverse
Att'ys' Fees -- Block Billing Time Entries, ECF No. 78-7.  Global
reductions of fifteen to twenty percent have been fairly common
penalties for block billing in this circuit.  See, e.g.,
Torres-Rivera, 524 F.3d at 340 (upholding a district court's
fifteen-percent global fee reduction as "plainly fall[ing] within
the range of reasonableness"); Conservation Law Found., 767 F.

Supp. 2d at 253 (accepting a twenty-percent global fee
reduction).   Given the imprecise construction of many of the time
entries and their frequent lack of task differentiation, the
Court deems a twenty percent global reduction to the four
aforementioned attorneys' lodestar hours wholly reasonable.   This
reduction is applied after the specific deductions announced
above.[13]

## 2. Reasonable Hourly Rates

Courts are instructed to consider "the prevailing market
rates in the relevant community" when called upon to determine a
reasonable hourly rate for attorneys' fees.   Andrade v. Jamestown
Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (quoting Blum v.

---

[13] AutoZone requests a reduction to Godkin's fees because
Godkin departed from the industry custom of billing time in
tenth-of-an-hour increments and instead billed his time in
quarter-hour increments.   See AutoZone Opp'n 17; see also Godkin
Fee Chart.   Although courts have upheld impositions of fee
reductions on the basis of billing in quarter-hour increments,
they have typically done so only when such alternative billing
schemes were improperly used to inflate the amount of time it
took to complete rote and routine tasks.   See, e.g., Diffenderfer
v. Gomez-Colon, 587 F.3d 445, 455-56 (1st Cir. 2009); Welch v.
Metro. Life Ins. Co., 480 F.3d 942, 948-49 (9th Cir. 2007).
Similar factors do not appear to be at play here; therefore, the
Court declines to further reduce Godkin's fees.
   AutoZone also requests a global reduction for excessive and
duplicative time records.   AutoZone Opp'n 12-13.   As the Court
has already accounted for and discounted those line items that do
not warrant reimbursement, the Court declines to effect any
additional global reduction to counsels' hours.   Cf. Adams v.
Bowater Inc., No. Civ. 00-12-B-C, 2004 WL 1572697, at *7 (D. Me.
May 19, 2004) (allowing a sixty percent global reduction in
purported duplicative and excessive fees because "a line-by-line
consideration of the multitude of time entries presented [was]
not practicable").

Stenson, 465 U.S. 866, 895 (1984)) (internal quotation marks omitted).  The Supreme Court has construed the phrase "prevailing market rates" to mean "those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.  "The relevant community for determining hourly rates is the community where the court sits," Walsh v. Bos. Univ., 661 F. Supp. 2d 91, 110 (D. Mass. 2009), and "[t]here is a presumption that Boston rates will apply in federal cases in the Boston court," Stokes v. Saga Int'l Holidays, Ltd., 376 F. Supp. 2d 86, 92 (D. Mass. 2005) (Collings, M.J.).  Courts are free to take account of myriad factors in fashioning a reasonable hourly rate, including "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." Grendel's Den, 749 F.2d at 951.  The burden of demonstrating the reasonableness of a proposed hourly rate rests on the party requesting that rate.  Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009).

AutoZone contests only the hourly rates proposed by two of Mahoney Burroughs's counsel: Godkin and Kaur.  AutoZone Opp'n 11 n.8, 18-20.  As a consequence, this Court will limit its discussion to the rates that ought correspond with the services rendered by these two attorneys.

### a. Godkin's Rate

Godkin requests that he be compensated at a rate of $425 per hour for his provision of legal services to Mahoney Burroughs. Reply Br. 10.  In support of this figure, Godkin has submitted an affidavit in which he boasts more than thirty years of litigation experience representing clients in a wide range of matters.  Aff. David S. Godkin Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs ("Godkin Aff.") ¶¶ 4, 8, ECF No. 69.  Godkin further contends that the rate he presently seeks is "far below the rates being charged by lawyers of comparable skill, reputation and experience in the Boston marketplace," highlighting not only the billing rates of some of his former partners but also the $550 per hour rate that he himself commanded before opening his own boutique law firm.  Id. ¶ 9.

These data do not suffice to prove the reasonableness of Godkin's requested rate, however.  For one thing, district courts are instructed to look beyond the affidavit of an attorney requesting fees in determining the prevailing market rate.  See Deary v. City of Gloucester, 9 F.3d 191, 198 (1st Cir. 1993). Admittedly, affidavits submitted by a pair of Boston-based attorneys do purport to attest to the reasonableness of Godkin's proposed rate by making reference to the rates charged by comparable attorneys at large area law firms.  See Aff. Nadine Cohen ("Cohen Aff.") ¶¶ 7-9, ECF No. 72 (opining that "Godkin is

26

of comparable skill and experience to a senior litigation partner in an established Boston law firm," id. ¶ 9); Aff. Joseph F. Savage, Jr. ¶¶ 7, 5, 8, ECF No. 73 (reporting billing rates of over $1,000 per hour for a partner at a large Boston law firm and between $325 and $660 per hour for associates at the same firm, id. ¶ 5).  These affidavits, however, fail to explain why the rates typically charged by large-firm, commercial litigators are equally applicable to Godkin, whose rendered services are quite different in character from those commonly provided to corporate clientele.  See Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (Saris, J.) ("[P]laintiffs must not show merely that higher rates exist in the market, but also that 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (quoting Blum, 465 U.S. at 895 n.11)); cf. Walsh, 661 F. Supp. 2d at 111-12 (endorsing the affidavits of experienced employment law attorneys in establishing the appropriateness of two attorneys' requested rates in an employment discrimination case).

Moreover, even if this Court were fully to credit the affidavits offered by Godkin and the other two attorneys, Godkin still has not provided sufficient documentation to persuade the Court that his particular professional background warrants such a high rate.  Courts generally accord additional weight to an

27

attorney's expertise and experience in determining a reasonable fee only to the extent that her expertise and experience is relevant to the subject matter of the litigation. See, e.g., Conservation Law Found., 767 F. Supp. 2d at 257 (distinguishing the reasonableness of rates for commercial litigators in Boston from those for litigators whose practice entails bringing suits under the Clean Water Act); D'Jamoos v. Griffith, No. 00 CV 1361(ILG), 2008 WL 2620120, at *19 (E.D.N.Y. Feb. 29, 2008) (declining an attorney's proposed rate for actions taken before the initiation of litigation because, inter alia, the attorney had "little legal expertise in [the] area of the underlying dispute"). Godkin's expertise in and experience with employment discrimination law is the central concern in this inquiry, then, not his practice with respect to matters in unrelated fields of law.[14]  Godkin's affidavit, as well as his online law firm profile, confirms that Godkin's body of experience pertains primarily to complex commercial litigation and intellectual property matters. Godkin Aff. ¶¶ 4, 6, 8; Krupicka Aff., Ex. K,

---

[14] This Court is persuaded by the argument advanced in AutoZone's opposition that Godkin's experience trying employment discrimination cases -- not simply his exposure to civil rights cases generally -- is the relevant factor to be considered for the purpose of calculating a reasonable fee. Compare AutoZone Opp'n 18-20, with Mem. Supp. 9-10. Nevertheless, were this Court to adopt the broader view, it is still unlikely that Godkin has proffered sufficient proof of experience and expertise in the area of civil rights law to warrant his requested rate.

Godkin Firm Website, ECF No. 78-11.[15]  Although Godkin's
affidavit lists three high-profile civil rights cases in which
Godkin served as lead counsel, see Godkin Aff. ¶ 8, none of them
arose out of circumstances involving alleged discriminatory acts
taking place in the workplace, see generally Cerqueira v. Am.
Airlines, Inc., 484 F. Supp. 2d 232 (D. Mass. 2007), rev'd, 520
F.3d 1 (1st Cir. 2008) (entertaining a civil rights claim in
which a U.S. citizen of Portuguese descent alleged that he was
mistreated by an airline's personnel ostensibly on the basis of
race); South End Lower Roxbury Hous. & Planning Coal. v. City of
Bos., No. 00-cv-11716-PBS (D. Mass. filed Aug. 24, 2000)
(concerning housing discrimination); Doe v. Bos. Hous. Auth., No.
96-cv-12540-RCL (D. Mass. filed Dec. 17, 1996) (same).  The
breadth of Godkin's experience on the whole does not suggest that
his success in Mahoney Burroughs's case was attributable to a set
of unique skills honed by years of employment discrimination
engagements.

What is more, over the past decade, courts in this district
generally have sanctioned rates for employment discrimination
attorneys practicing in the Boston area that range from $150 to

---

[15] Although Godkin's profile is presently available online,
see David S. Godkin, Birnbaum & Godkin, LLP,
http://www.birnbaumgodkin.com/david-s-godkin.php (last visited
Mar. 19, 2013), for the purpose of authenticity, the Court cites
to the static version of his profile, submitted by AutoZone, that
bears an access date of April 30, 2012, see Godkin Firm Website.

$350 per hour, with the higher end of the range often reserved
for those with substantial experience in the area.  See, e.g.,
Walsh, 661 F. Supp. 2d at 111-12 (awarding $175 in an employment
discrimination case to an attorney with only five years of
litigation experience, granting $275 to an attorney who for nine
years "ha[d] concentrated her practice in employment law," id. at
111, and awarding $350 to an attorney who for eleven years had
been "practicing exclusively in the field of employment law,"
id.); McDonough, 353 F. Supp. 2d at 187-88 (adopting a rate of
$200 for an attorney who "ha[d] concentrated in employment law
for eleven years," id. at 187, and recognizing a rate of $150 per
hour for an attorney who, despite maintaining a general
litigation practice, had "substantially less" experience in
employment law than her peer who commanded a $200-per-hour rate,
id. at 188).

    The Court is loath to rely exclusively upon existing figures
that may not account for present-day inflation, however.
Additionally, as it has noted in earlier cases, this Court
recognizes the discrepancy among judges in this district in the
award of attorneys' fees and regrets that appealing to awards by
other judges is moderately helpful, at best.  See Wilson v.
McClure, 135 F. Supp. 2d 66, 72 n.2 (D. Mass. 2001); Ciulla v.
Rigny, 89 F. Supp. 2d 97, 104 n.8 (D. Mass. 2000).  Indeed, this
Court itself awarded $325 to Godkin in one of the civil rights

cases featured in his affidavit, which would place him on the upper end of the civil-rights rate spectrum.  <u>See</u> <u>Cerqueira</u>, 484 F. Supp. 2d at 250-51.

Nevertheless, Godkin's proposed rate of $425 is too high, given the apparent dearth of his <u>employment discrimination</u> experience.  In light of Godkin's extensive record as an accomplished federal litigator, however, an upward adjustment can be made.  Accordingly, this Court holds that Godkin is entitled to a rate of $350 per hour.[16]

---

[16] Godkin's secondary suggestion that his proposed hourly rate of $425 is reasonable when compared to the rates reflected in the so-called Laffey Matrix, <u>see</u> Godkin Aff. ¶ 14, similarly fails.  The Laffey Matrix, which is prepared and updated annually by the Civil Division of the Office of the United States Attorney for the District of Columbia, provides an inflation-adjusted rate schedule for legal professionals practicing in the Washington, D.C., greater metropolitan area that assigns suggested rates on the basis of professional rank and federal litigation experience. Godkin Aff., Ex. B, Laffey Matrix -- 2003-2012 ("Laffey Matrix"), ECF No. 69-2.  Although some courts have found the Laffey Matrix instructive in establishing the prevailing market rates for attorneys in a variety of jurisdictions, <u>see, e.g.</u>, <u>Hadnott</u> v. <u>City of Chi.</u>, No. 07 C 6754, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010), many others have cast doubt on the utility of the rate schedule outside of the District of Columbia and have rejected its extension to other communities, <u>see, e.g.</u>, <u>Prison Legal News</u> v. <u>Schwarzenegger</u>, 608 F.3d 446, 454 (9th Cir. 2010); <u>Cooper</u> v. <u>Paychex, Inc.</u>, Nos. 97-1645, 97-1543, 971720, 1998 WL 637274, at *13 & n.7 (4th Cir. Aug. 31, 1998).  Most relevantly, federal judges in and around Boston have impliedly adopted a narrow view on the scope of the Laffey Matrix's application, often awarding fees based on rates well below those prescribed in the rate schedule.  <u>See, e.g.</u>, <u>Rolland</u> v. <u>Patrick</u>, 765 F. Supp. 2d 75, 78 (D. Mass. 2011) (Neiman, M.J.) (collecting cases). A rate of $495 for an attorney with twenty years or more of federal litigation experience is regarded as reasonable under the Laffey Matrix for the 2011-2012 year, Laffey Matrix, which is $70 more than the rate requested by Godkin, a thirty-year veteran

### b. Kaur's Rate

Kaur requests that her services be reimbursed at a rate of $330 per hour. Reply Br. 10. AutoZone contests this rate on the sole ground that, in its estimation, it is "excessive given her limited role in the case." AutoZone Opp'n 11 n.8.

The First Circuit has held that "[a] court may reduce an attorney's hourly rate based on the type of work that attorney performed during the litigation." Bogan v. City of Bos., 489 F.3d 417, 429 (1st Cir. 2007); see also Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212, 217-18 (D. Mass. 2004) (acknowledging that, although hours are the appropriate mechanism to use for making adjustments to attorneys' fees, a court may reduce an hourly rate "for performing tasks appropriate to either a less experienced lawyer or a secretary or paralegal," id. at 217-18 (quoting McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals, 140 F.3d 288, 308 (1st Cir. 1998)) (internal quotation mark omitted)). Courts typically account for an attorneys' limited role in a case, however, by making adjustments to the number of hours recognized, not to the rate requested. See Miles v. Sampson, 675 F.2d 5, 9 (1st Cir. 1982) (observing that "[o]rdinarily, and preferably, . . . adjustments [to reduce

---

litigator, Godkin Aff. ¶¶ 4, 14. Any inferences to be drawn from the Laffey Matrix ought be discounted, however, particularly given this district's prevailing range of market rates for employment discrimination attorneys in Boston.

unreasonable or excessive work] are accomplished by a reduction in hours").

Kaur presently serves as the legal director of the Sikh Coalition, a civil rights organization dedicated to the causes of the Sikh-American community, and has been associated with the organization for the past six years.  Decl. Harsimran Kaur Supp. Intervenor Pl.'s Mot. Att'ys' Fees ¶ 3, ECF No. 83.  Kaur states in her affidavit that, at the Sikh Coalition, she has litigated a number of employment discrimination cases, developing a resident expertise in matters associated with religion-based discrimination in the workplace.  Id.  Prior to joining the Sikh Coalition, Kaur worked at a boutique law firm where she represented plaintiffs in employment discrimination matters. Id.; see also Cohen Aff. ¶ 15.  An affidavit submitted by an attorney at a Boston-based legal services organization with significant experience working on civil rights matters testified to Kaur's specialized discrimination- and employment-oriented skill set.  See Cohen Aff. ¶ 15.

As the Court has already reduced the number of hours expended by Kaur that it will recognize for the purpose of determining her fees, see supra section III.B.1, and because Kaur has demonstrated an extensive history in employment discrimination litigation, the Court need not make any further adjustments to Kaur's proposed $330-per-hour rate.

## C. Fee Award and Reductions

Consequently, Mahoney Burroughs is entitled to recover attorneys' fees as detailed in Table 2 below.

**Table 2**

| Name | Position | Hours | Rate | Total in $ |
|------|----------|-------|------|------------|
| David S. Godkin | Lead Counsel | 296.75 | $350 | 103,862.50 |
| Laura Maslow-Armand | Staff Attorney Lawyer's Committee | 117.75 | $250 | 29,437.50 |
| Sandeep Kaur Randhawa | Staff Attorney The Sikh Coalition | 84.25 | $150 | 12,637.50 |
| Harsimran Kaur | Legal Director The Sikh Coalition | 5.15 | $330 | 1,699.50 |
| 20% deduction for block billing applied to Godkin, Maslow-Armand, Randhawa, and Kaur | | | | -29,527.40 |
| Jamie R. Spiller | Legal Fellow Lawyer's Committee | 20.9 | $125 | 2,612.50 |
| | | | Total Fees: | 120,722.10 |

## D. Costs

The prevailing party is presumptively entitled to recover reasonable costs expended in connection with litigation.  See Delta Air Lines, Inc. v. August, 450 U.S. 346, 351 (1981); see also Fed. R. Civ. P. 54(d)(1).  If a party's request for costs is uncontested, the request is customarily granted.  See, e.g., Bowling v. Hasbro, Inc., 582 F. Supp. 2d 192, 209 (D.R.I. 2008); Whitcomb v. Trs. of Dartmouth Coll., No. 92-503-B, 1995 WL 515588, at *6 (D.N.H. May 4, 1995).  Nevertheless, before such a

grant may be made, the Court must still independently assess whether the costs sought to be reimbursed are in fact reasonable. See <u>Grendel's Den</u>, 749 F.2d at 951.

Mahoney Burroughs's request for costs is undisputed.  See AutoZone Opp'n; Defs.' Sur-Reply Opp'n Intervenor Pl.'s Mot. Atty's' Fees & Costs, ECF No. 86.  Mahoney Burroughs seeks reimbursement for nontaxable costs resulting from postage and courier costs, Godkin Aff. ¶ 15, Randhawa's travel costs, Aff. Sandeep Kaur Randhawa Supp. Intervenor Pl.'s Mot. Att'ys' Fees & Costs ¶ 11, ECF No. 71, and parking costs, Aff. Laura Maslow-Armand Supp. Pl.'s Mot. Allowance Att'ys' Fees & Costs ¶ 11, ECF No. 70.  Furthermore, Mahoney Burroughs detailed his taxable costs in a Bill of Costs.  Bill Costs.  After reviewing Mahoney Burroughs's submitted documentation on the costs incurred in this litigation, this Court rules that the proposed costs are reasonable.  Accordingly, the Court awards to Mahoney Burroughs nontaxable costs in the amount of $1,332.90 and taxable costs in the amount of $1,290.25.

**IV. CONCLUSION**

For the foregoing reasons, Mahoney Burroughs's motion for attorneys' fees and costs is GRANTED.

AutoZone shall compensate Mahoney Burroughs in the amounts of $120,199.60 for attorneys' fees and $2,623.15 for litigation costs.

**SO ORDERED.**

/s/William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE